### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

COOPER FINANCIAL, LLC,

                **Plaintiff**

      **v.**                             **Case No. 1:12-cv–295-HJW**

THE FROST NATIONAL BANK,

                **Defendant**

### ORDER

Pending is the "Motion to Dismiss For Lack of Personal Jurisdiction, or Alternatively, to Transfer Venue" (doc. no. 8) by defendant Frost National Bank ("Frost NB"). Plaintiff Cooper Financial, LLC ("Cooper") opposes the motion and suggests a third alternative, namely, limited discovery followed by a hearing on personal jurisdiction. Having fully considered the pleadings, the parties' briefs (doc. nos. 8, 12, 13, 16, 17), and applicable authority, the Court will <u>grant</u> the defendant's alternative request to <u>transfer</u> this case to the United States District Court for the Northern District of Texas for the following reasons:

### I.  Background

This dispute concerns the parties' interests in over $340 million dollars worth of aged or delinquent credit card debts purchased from

credit card issuers for a small percentage of face value. According to the complaint, on December 13, 2006, a Texas limited partnership King Fisher, Ltd. ("King Fisher") obtained a $10 million revolving line of credit from Frost NB in Texas in order to buy delinquent credit card account receivables, subject to a security interest held by the bank (¶¶ 8-10). King Fisher consolidated its loans in 2008 and, in Texas, entered a new loan agreement ("Frost Loan") with Frost NB, secured by the same collateral as the 2006 loan agreement (¶ 12).[1]

On October 1, 2008, King Fisher, under the name LP Investments, Ltd. ("LPI") resold 170,000 account receivables for $9.3 million to Elmhurst Receivables, LLC ("Elmhurst"), a wholly-owned Illinois subsidiary of Ohio-based Cooper Financial, LLC ("Cooper") (¶ 14).[2] On October 14, 2008, in Texas, a Sale Agreement and Bill of Sale were executed by LPI for those receivables (doc. no. 8-2 at 38). In December of 2008, Elmhurst assigned its rights to Cooper, which in turn, collected or resold those account receivables to third parties (¶¶ 16, 21). Cooper

---

[1] Plaintiff spells it "King Fisher," while Frost spells it "King Fischer." The Court, for now, will use the former.

[2] The purchase contract for the receivables lists a Rochester N.Y. address for Elmhurst.

resold approximately 145,000 of the accounts to third parties, some of whom again resold the accounts (doc. no. 12 at 6). Cooper indicates it still possesses approximately 20,000 of the accounts.

Under this arrangement, the purchaser (Elmhurst, or later, its assignee Cooper) would remit money to LPI toward the $9.3 million purchase price as accounts were collected. Per LPI's instructions, Cooper deposited any collected money into a lock box at Frost NB ("Frost Lock Box"), which LPI managed and the bank monitored in Texas. Cooper contends that LPI credited Cooper with approximately $2.2 million on its collections deposited in the Frost Lock Box.

LPI also instructed Cooper to wire certain collection funds totaling $973,636.71 into LPI's bank account at Frost NB (the "Frost Account") (¶¶ 19-21). Between December 24, 2008 and July 31, 2009, Cooper wired 15 separate payments from Cooper's account at JP Morgan Chase Bank, N.A. in Ohio to LPI's Frost Account in Texas, totaling $1,000,574.00 (doc. no. 12 at 6). As payments were received in the Frost Lock Box or Frost Account, LPI sent reports to Cooper, tracking payments applied toward the purchase price, including

3

payments that had been made, or were to be made, to Frost NB. Cooper asserts that under the "Lockbox Agreement," LPI could only withdraw or disburse funds from the Frost Lock Box if it credited the money to Cooper for the purchase price of the receivables (doc. no. 8-2 at 52, ¶ 3). Any remaining funds were supposed to be held in trust for Elmhurst/Cooper (Id.). The Lock Box Agreement was between LPI and Elmhurst (doc. no. 8-2 at 52). Frost NB was not a party to it. Nonetheless, Cooper asserts that Frost NB "created the Frost Lock Box to monitor activities (sales and collections of receivables) and requested reports from [King Fisher/LPI] on its activities in Ohio and elsewhere to ensure repayment of the loans (doc. no. 17 at 4).

In June of 2009, LPI ceased all communications with Cooper (doc. no. 12 at 6). King Fisher/LPI defaulted on its bank loan with Frost NB. According to Cooper, LPI or Frost NB withdrew funds from the Frost Lock Box and misapplied the funds to pay off King Fisher/LPI's loan with Frost NB. Cooper suggests that Frost NB either required King Fisher/LPI to do so, or alternatively, simply accessed the funds as payment toward the Frost Loan. Cooper indicates it does not know the exact

4

arrangement between King Fisher/LPI and Frost NB (doc. no. 12 at 5).

After King Fisher/LPI defaulted on the Frost Loan, Frost NB filed suit on October 5, 2011, against King Fisher/LPI in state court in Texas, i.e. the 342nd Judicial District Court for Tarrant County, Texas (doc. no. 8 at 4, ¶7). The state court appointed a receiver to identify and sell any collateral (doc. no. 8-2 at 23). King Fisher/LPI contended that the sale to Elmhurst "never occurred" because Elmhurst had not paid the full purchase price. In the state case, Elmhurst/Cooper filed a "limited objection" (doc. no. 8-2 at 34) contending that it had purchased the rights to 170,000 accounts from LPI in the ordinary course of business, that no "liens" were attached to those receivables, and that it had paid King Fisher/LPI "in full" (Id. at ¶¶ 3-4). Cooper indicates it had found no security interest under the name LPI, whereas Frost NB indicates that its security interest was based on the Frost Loan to King Fisher (which did business as "LPI" when dealing with Elmhurst).

In its "Order of March 28, 2012," the Texas state court held that King Fisher/LPI could not convey title to the account receivables because Frost National Bank "never released its security interest in the

disputed accounts, nor was it paid the $9 million contemplated by the alleged sale" (doc. no. 8-2 at 63, ¶¶ 9-10). The state court considered and overruled the "limited objection" of Elmhurst/Cooper (doc. no. 8-2 at 63, ¶ 6). The state court rejected Elmhurst/Cooper's argument that it was a "buyer in the ordinary course of business" because the Texas law pertaining to "buyers in the ordinary course of business" applied to goods, not accounts receivables (Id. at ¶ 11). The state court ordered the receiver to sell the accounts claimed by Elmhurst/Cooper, except for the portion that Cooper had resold to a third party "RAB Performance Recoveries, LLC" (Id. at ¶¶ 7, 14, 15).

Several weeks later on April 12, 2012, Cooper filed the present federal declaratory action against Frost NB in the Southern District of Ohio. Cooper seeks a declaration that it was "a bona fide purchaser of the receivables and/or a purchaser in the ordinary course," that Frost NB authorized or acquiesced in King Fisher/LPI's sale of the account receivables to Elmhurst/Cooper, that Frost NB thereby relinquished its security interest in those receivables, and that Cooper has priority over any security interest that Frost NB may posses (¶¶ 26-34). Cooper asks

6

this Court to determine "who, as between Cooper and Frost, has rightful title to all the receivables, despite a receivership proceeding (in which Cooper was not a party) having taken place in Texas" (doc. no. 12 at 1). Cooper asserts that "no security agreement had been filed by Frost NB naming LPI" and that Elmhurst/Cooper was unaware of any security agreement between Frost NB and King Fisher (doc. no. 12 at 4).

Defendant Frost NB has filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, or alternatively, to transfer. Cooper opposes dismissal and/or transfer, and suggests that limited discovery be allowed, followed by an evidentiary hearing on personal jurisdiction.

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a claim for lack of jurisdiction over the person. Plaintiff bears the burden of establishing that such jurisdiction exists. Fed.R.Civ.P. 12(b)(2); <u>Youn v. Track, Inc</u>., 324 F.3d 409, 417 (6th Cir. 2003). When a district court rules on a motion to dismiss for lack of personal jurisdiction without a hearing, the court considers the pleadings and affidavits in the light most favorable to plaintiff. <u>CompuServe, Inc. v. Patterson</u>, 89 F.3d 1257,

7

1262 (6th Cir. 1996).

The parties agree that specific jurisdiction is at issue here. Specific jurisdiction exists where the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum state. Air Products and Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 549 (6th Cir. 2007). In analyzing personal jurisdiction in diversity actions, federal courts look to the law of the forum state to determine whether the district court has personal jurisdiction over a party, subject to constitutional due process requirements. Id.

Ohio's long-arm statute provides nine grounds to exercise specific personal jurisdiction. Ohio R.C. § 2307.382(A)(1-9). As to whether the exercise of specific jurisdiction meets constitutional due process requirements, the pertinent inquiry is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice." Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998)). Ohio's long-arm statute does not extend to the constitutional limits of the Due Process Clause. Conn v. Zakharov, 667 F.3d 705, 712 (6th Cir. 2012).

In considering whether specific personal jurisdiction may be exercised consistent with due process, relevant factors to consider include whether: 1) the defendant purposefully availed itself of the privilege of acting in Ohio or causing a consequence in Ohio; 2) the cause of action arises from the defendant's activities there, and 3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable. <u>Id</u>. at 550. All three factors must be met to satisfy due process. <u>LAK, Inc. v. Deer Creek Enterprises</u>, 885 F.2d 1293, 1303 (6th Cir. 1989), cert. denied, 494 U.S. 1056 (1990).

## III. Discussion

### A. Personal Jurisdiction

Frost NB argues that this Court lacks personal jurisdiction over it, and alternatively, that venue is proper in Texas, not Ohio. Frost NB has alluded to res judicata and/or claim preclusion (i.e. the ownership of the receivables has already been litigated in the state action in Texas), but has not moved to dismiss on such basis. Although Cooper argues that "many of the receivables are in Ohio," the Texas state court held that

9

LPI could not sell them to Cooper and that Frost NB retained a security interest in them. The state court in Texas rejected Elmhurst/Cooper's "limited objection" based in part on Texas law. Cooper is essentially asking this Court to declare that Cooper owns the receivables, a result that appears inconsistent with the prior order of the Texas state court.

Frost NB points out that its principal place of business is in Texas, that all of its branches are in Texas, and that the initial loan agreements and other bank documents were executed in Texas with a Texas borrower (King Fisher/LPI). Frost NB asserts "the only connection to Ohio is the fact that Cooper is located there" (doc. no. 8 at 9). Frost NB indicates it was not aware of the sale to Elmhurst or the assignment to Cooper (doc. no. 8 at 8), an assertion that Cooper disputes. Cooper points to the "Frost Lock Box" as evidence that Frost NB was aware of and acquiesced in the assignment to Cooper and actively monitored the funds to ensure payment of the Frost Loan.

Cooper argues that: 1) many of the receivables at issue are currently located in Ohio; 2) Frost NB "purposely availed itself in Ohio by making a claim to the Ohio Receivables;" 3) Frost NB was aware (or

10

should have been aware) that King Fisher/LPI sold the receivables nationwide; 4) Frost NB received and benefitted from Cooper's payments into King Fisher/LPI's accounts at Frost NB; and 5) Frost NB and King Fisher/LPI directed "numerous communications" to Cooper in Ohio (doc. no. 12 at 2). Essentially, Cooper is arguing that this amounts to Frost NB "transacting business" in Ohio for purposes of Ohio's long-arm statute, Ohio R.C. § 2307.382(A)(1).

Cooper alternatively argues that the Court has in rem jurisdiction "over property, e.g., the Ohio Receivables" (doc. no. 12 at 11-12). Cooper asserts that the remaining "20,000 receivables" are in Ohio because Cooper owns them and is located there (doc. no. 12 at 11). Cooper cites <u>Johnson v. Long Beach Mortgage Loan Trust 2001-4</u>, 451 F.Supp.2d 16 (D.D.C. 2006) for the proposition that "where a party claims a security interest in property located in another state . . . it is subject to personal jurisdiction in the state where the property is located" (doc. no. 17 at 3, fn. 2). Reliance on such case in misplaced, as <u>Johnson</u> involved a security interest in real estate, and the long-arm statute at issue in that non-Ohio case specifically referred to interests

11

in real estate.

Frost NB responds that, as held by the Texas state court, Cooper does not "own" the receivables, and moreover, Cooper's location is irrelevant to "in rem" jurisdiction over the receivables (doc. no. 16 at 1). Frost NB suggests that the "res" at issue is actually its Texas-filed security interest in the receivables (Id. at 10).

## B. Venue

Ultimately, these thorny issues regarding personal jurisdiction need not be resolved here. Even assuming that Frost NB's dealings with Cooper would be sufficient under Ohio's long-arm statute to find personal jurisdiction over Frost NB here (and further assuming those minimum contacts would be constitutionally sufficient), the defendant's argument for transferring venue to a more convenient forum pursuant to 28 U.S.C. § 1404 has merit.

Section 1404(a) provides that [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this provision is to transfer actions brought in

12

a permissible, yet inconvenient forum. <u>Martin v. Stokes</u>, 623 F.2d 469, 471 (6th Cir. 1980); <u>Pittock v. Otis Elevator Co.</u>, 8 F.3d 325, 329 (6th Cir. 1993) (the court must have personal jurisdiction over the defendant to transfer under § 1404). Relevant factors include: 1) the convenience of the parties and witnesses, 2) access to evidence; 3) the availability of process to compel attendance of witnesses; 4) the cost of obtaining willing witnesses; 6) other practical problems associated with trying the case most expeditiously and inexpensively; and 7) the interest of justice. <u>Buckeye Check Cashing of Arizona, Inc. v. Lang</u>, 2007 WL 641824 (S.D.Ohio) (J. Graham) (citing <u>Moses v. Business Card Express, Inc.</u>, 929 F.2d 1131, 1137 (6th Cir.), cert. denied, 502 U.S. 821 (1991)). These factors strongly favor venue in Texas. The majority of discovery will necessarily take place in Texas, and the witnesses and proof are located there. In short, the federal court in Texas is a far more convenient forum for this dispute.

Even if personal jurisdiction over the defendant is lacking, the court may transfer a case to another district pursuant to 28 U.S.C. § 1406. <u>Jackson v. L & F Martin Landscape</u>, 421 Fed. Appx. 482, 483 (6th

13

Cir. 2009) (observing that a court need not have personal jurisdiction over the defendant before transferring pursuant to § 1406(a)). In other words, this provision applies to cases brought in an *impermissible* forum. Martin, 623 F.2d at 474; see also, Taylor v. Love, 415 F.2d 1118 (6th Cir. 1969) (district court may transfer case to another district even absent personal jurisdiction over defendant), cert. denied, 397 U.S. 1023 (1970).

Pursuant to 28 U.S.C. § 1406(a), the court may, in the interests of justice, transfer the case to a district court in which it could have been brought. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962) (holding that § 1406(a) does not require a district court to have personal jurisdiction over the defendant before transferring the case). Such decision is within the district court's sound discretion. First of Mich. Corp. v. Bramlet, 141 F.3d 260, 262 (6th Cir. 1998). When a plaintiff has some arguable basis for believing that the action was properly brought in a particular district, transfer is the usual course rather than dismissal. 15 Wright & Miller, Fed. Prac. & Proc. § 3827 at 274 (1986); Stanifer v. Brannan, 564 F.3d 455, 460 (6th Cir. 2009).

14

Since Frost NB is a Texas bank, this case could "have been brought" there. See 28 U.S.C. § 1391(a) (providing that in a civil action based on diversity, venue is proper in the judicial district where the defendant resides, or where a substantial part of the events giving rise to the claim occurred). Again, most of the facts strongly favor venue in Texas. King Fisher/LPI and Frost NB are both located in Texas. The original deal between LPI and Elmhurst was made in Texas. The bank accounts and Frost Lock Box are in Texas. The security interest asserted by Frost NB is in Texas. The witnesses with relevant knowledge are representatives of Frost NB and King Fisher/LPI in Texas. The state-appointed receivership for King Fisher/LPI's collateral is in Texas. The purchase contract between LPI and Elmhurst specified that Texas law would apply. Frost NB points out that the only witnesses in Ohio are Cooper's witnesses, who lack personal knowledge about the agreements between Frost NB and King Fisher/LPI (which is one reason why Cooper wants to do discovery in this action). Notably, any discovery in the present action would necessarily take place in Texas. Thus, even absent personal jurisdiction over Frost NB in Ohio, this case,

in the interests of justice, may appropriately be transferred pursuant to 28 U.S.C. § 1406(a). See <u>Stone v. Twiddy & Co. of Duck, Inc.</u>, 2012 WL 3064103, *6 (S.D.Ohio) (J. Barrett) ("this Court may sua sponte order that a case be transferred pursuant to § 1406").

Accordingly, the defendant's "Motion to Dismiss For Lack of Personal Jurisdiction, or Alternatively, to Transfer Venue" (doc. no. 8) is <u>GRANTED</u> in the alternative; this case is TRANSFERRED to the United States District Court for the Northern District of Texas, Fort Worth Division.

IT IS SO ORDERED.


          <u>       s/Herman J. Weber   </u>
          **Herman J. Weber, Senior Judge**
          **United States District Court**

16